FILED
2024 JUN 20 PM 3:17
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY [illegible]
DEPUTY

**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | | |
|---|---|---|
| **NUBIA HERRERA,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**CR1F GROUP LLC,** a California Limited Liability Company dba **CREDIT 1 FINANCE, CORDOBA LEGAL PLLC,** and **EASY FINANCE,** an Unknown Business Entity<br><br>**Defendants** | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | EP24CV0216-LS |

**PLAINTIFF'S COMPLAINT**

Plaintiff, Nubia Herrera ("Plaintiff") files this action against CR1F Group LLC dba Credit 1 Finance, Cordoba Legal PLLC, and Easy Finance, collectively for violations of the Telephone Consumer Protection Act and Texas Business and Commerce Code.

**PARTIES**

1. Plaintiff Nubia Herrera ("Plaintiff") is a natural person, a resident of the Western District of Texas, and was present in Texas for all calls received in this case. Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

2. Defendant CR1F Group LLC dba Credit 1 Finance ("Credit 1") is a Limited Liability Company organized and existing under the laws of California and can be served via registered agent Registered Agents Inc., 5900 Balcones Drive, Suite 100, Austin, Texas 78731.

3. Defendant CORDOBA LEGAL GROUP PLLC ("Cordoba") is a professional limited liability company organized and existing under the laws of Florida and can be served via

registered agent Alfredo Cordoba, 102 NE 2nd, Street #252, Boca Raton, Florida 33432.

4. EASY FINANCE ("Easy Finance") is an unknown business entity that makes phone calls on behalf of Defendant Cordoba. Easy Finance's location and service address will be revealed during discovery.

5. Defendants are hereinafter referred to as "Defendants".

**JURISDICTION AND VENUE**

6. The Court has federal question subject matter jurisdiction over these TCPA claims. *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012).

7. This Court also has supplemental subject matter jurisdiction over the state law claims under 28 U.S.C. § 1367(a), because they are so closely related to the federal claims that they form a single case or controversy.

8. Personal Jurisdiction. This Court has specific personal jurisdiction over Defendants because Defendants purposefully availed themselves to Texas and this District, and there is a sufficient relationship between Defendants' purposeful contacts with Texas and the litigation:

   a. Defendants target Texas when marketing debt relief services, including telephone solicitations, and regularly conduct business in this District.

   b. Defendants called Plaintiff's Texas area phone number ending in 0489 to generate leads for Defendants.

   c. These calls to Texas injured Plaintiff in Texas, creating a causal link among Defendants, the forum, and the litigation that exceeds the non-causal affiliation sufficient to support personal specific jurisdiction. *See Ford Motor Co. v Mont. Eight Jud. Dist. Ct.*, 141 S. Ct. 1017 (2021).

9. Venue is proper because Plaintiff is a resident of this District and Defendants have

sufficient contacts in this State and District to subject them to personal jurisdiction. As set forth above, Defendants targeted residents of this District and made calls into this State.

## THE TELEPHONE CONSUMER PROTECTION ACT OF 1991, 47 U.S.C. § 227

10. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

11. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system ('ATDS") or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

12. The TCPA makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States or is exempted by rule or order" of the Federal Communication Commission ("FCC"). 47 U.S.C. § 227(b)(1)(B).

13. The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A) or 47 U.S.C. § 227(b)(1)(B). *See* 47 U.S.C. § 227(b)(3).

14. According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and

inconvenient.

15. In 2013, the FCC required prior express written consent for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers and residential lines. Specifically, it ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.[]"

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991,* 27 F.C.C. Rcd. 1830, 1844 (2012)

16. The national Do Not Call Registry (the "Registry") allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. See 47 C.F.R. § 64.1200(c)(2). A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id.*

17. The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential and wireless telephone subscribers to the Registry. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)(2).

18. The regulations exempt from liability a caller who has obtained the subscriber's signed, written agreement to receive telephone solicitations from the caller. 47 C.F.R. § 64.1200(c)(2)(ii). That agreement must also include the telephone number to which the calls may be placed. *Id.*

19. The Federal Communications Commission found that it "must mandate procedures for establishing company-specific do-not-call lists to ensure effective compliance with and enforcement of the requirements for protecting consumer privacy." *Id.* at ¶ 24.

20. These regulations are codified in part at 47 CFR 64.1200(d)(1)-(7). Specifically, these regulations require a company to provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. 47 CFR 64.1200(d)(4) (emphasis added).

21. These policies and procedures prohibit a company from making calls for telemarketing purposes[1] unless they provide the required information. 47 CFR 64.1200(d)).

22. Accordingly, all telemarketing calls violate the TCPA, unless Defendants can demonstrate that they have provided the required information on each of the calls.

23. There is a private right of action to enforce 47 C.F.R. § 64.1200(d) through § 227(c):

> [S]ection 227(c)(5)... empowers 'any person' to sue for damages and injunctive relief for do-not-call violations 'by or on behalf of' a company. In accordance with this statutory provision, the Commission's company-specific do-not-call rules provide that '[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive

[1] The distinction between the use of "telephone solicitation" in relation to the national do-not-call database and calls for "telemarketing purposes" in relation to the company-specific do-not-call list is significant. "Telephone solicitation" excludes calls made to a person with whom the company has as established business relationship, 47 CFR 64.1200(f)(14), which can be established by a "voluntary two-way communication". 47 CFR 64.1200(f)(5). But this business relationship can be terminated by a "do not call" request. 47 CFR 64.1200(f)(5)(i). "Telemarketing purposes", on the other hand, includes any calls made for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, regardless of any consent or established business relationship. 47 CFR 64.1200(f)(12). In other words, prior to making any telemarketing calls to anyone, regardless of relationship, a company must implement the company-specific do-not-call regulations, but it only need to comply with the national do-not-call registry provisions with respect to persons with whom it does not have an existing established business relationship.

> telemarketing calls made by or on behalf of that person or entity[.]' 47 C.F.R. § 64.1200(d).

*In re Dish Network*, 28 FCC. Rcd. 6574, ¶ 29 (2013).

24. These requirements are separate but cumulative. In other words, a company must comply with both the required information and comply with the national "do not call" database regulations. A failure to comply with either is distinct a violation of 47 U.S.C. § 227(c).

25. Though some of these requirements mention "residential" telephones, they were all extended to cover calls to cellular telephones as well as residential telephones. 47 CFR § 64.1200(e).

26. Further, a person or entity can be liable for calls made on its behalf in violation of the TCPA, even if that person or entity did not directly dial such calls. *See, e.g., In re Rules & Regs. Implementing the TCPA*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995) (explaining that the FCC's "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any [TCPA] violations"). In fact, in May 2013, the FCC issued a binding declaratory ruling clarifying that sellers "may be held vicariously liable under federal common law principles of agency for TCPA violations committed by third-party telemarketers . . . under a broad range of agency principles, including not only formal agency, but also principles of apparent authority and ratification." *In re Joint Petition Filed by DISH Network, LLC et al. for Declarator Ruling Concerning the TCPA Rules*, 28 FCC Rcd. 6574, 6584 ¶28 (2013).

27. Accordingly, an entity can be liable under the TCPA for a prohibited call made on its behalf under a number of theories including vicarious liability. Under those circumstances, including as described herein as to Defendants, the seller is properly deemed to have initiated the call through the person or entity that actually placed the call.

28. Individuals acting on behalf of a corporation may be held personally liable for violations

of the TCPA if they "had direct, personal participation in or personally authorized the conduct found to have violated the statute." *Texas v. Am. Blastfax, Inc.*, 164 F.Supp.2d 892, 898 (W.D.Tex. 2001)("[A]n officer may be personally liable under the TCPA if he had direct, personal participation in or personally authorized the conduct found to have violated the statute, and was not merely tangentially involved. Individuals who directly (and here, knowingly and willfully) violate the TCPA should not escape liability solely because they are corporate officers.").

29. A number of other federal district courts have concluded that individuals acting on behalf of a corporation may be held personally liable under the TCPA when they directly participated in, or personally authorized, the violative conduct. *See City Select Auto Sales Inc. v. David Randall Assocs., Inc.*, 885 F.3d 154, 161 (3rd Cir. 2018); *Bais Yaakov of Spring Valley v. Graduation Source, LLC*, No. 14-CV-3232 (NSR), 2016 WL 1271693, at *5 (S.D.N.Y. Mar. 29, 2016); *Sandusky Wellness Ctr., LLC v. Wagner Wellness, Inc.*, No. 3:12 CV 2257, 2014 WL 1333472, at *3 (N.D. Ohio Mar. 28, 2014); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 416 (D.Md. 2011)(reasoning that "if an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force"); *Baltimore-Washington Tel. Co. v. Hot Leads Co., LLC*, 584 F. Supp. 2d 736, 745 (D. Md. 2008).

30. The regulations enforcing and interpreting the TCPA, also require that any person or entity that engages in telemarketing must transmit caller identification information.[2] 47 C.F.R. § 64.1601(e). This prevents a telemarketer from "spoofing" (using a false identification for their marketing calls) the telephone number from which the telemarketing call is made. Additionally,

[2] The information required is: (1) the calling party number, "CPN" or automatic numbering information, "ANI"; and (2) the name of the telemarketer. 47 C.F.R. § 64.1601(e).

the regulations require telemarketers to -provide the name of the telemarketer when available by the telemarketer's carrier and the seller's customer service number.

31. Here Defendants did not comply with the requirements of 47 C.F.R. § 64.1601(e) as it provided incorrect information regarding the number from which the calls were being made.

## TEXAS' SOLICITATION REGISTRATION AND ROBO-CALLING STATUTES

32. Section 302.101 of the Texas Business & Commerce Code prohibits sellers from engaging in telephone solicitation from a location in this state or to a purchaser located in this state unless the seller obtains a registration certificate from the Office of the Secretary of State for the business location from which the solicitation is made.

33. Sellers engaging in telephone solicitations are required to register and, among other things, list "each telephone number to be used by the seller and the address where each telephone using the number is located." §302.151(10).

34. Section 302.302(a) of the Texas Business & Commerce Code provides that a person who violates this chapter is subject to a civil penalty of no more than $5,000 for each violation. Furthermore, section 302.302(d) provides that the party bringing the action is also entitled to recover all reasonable costs of prosecuting the action, including court costs, investigation costs, deposition expenses, witness fees, and attorneys' fees.

35. Pursuant to section 305.053(a) of the Texas Business & Commerce Code, a person who receives a communication that violates 47 U.S.C. § 227, or a regulation adopted under that provision, may bring an action against the person who originates the communication for an injunction, damages or both.

## FACTUAL ALLEGATIONS

36. Plaintiff personally and successfully registered her phone number ending in 0489 to the

National Do-Not-Call Registry ("DNC") on April 3, 2024.

37. Plaintiff registered her phone number to gain seclusion from unwanted solicitation phone calls.

38. The calls were to Plaintiff's cellular phone, which is Plaintiff's personal cell phone that she uses for personal, family, and household use. Plaintiff maintains no landline phones at her residence and has not done so for at least 10 years. Plaintiff primarily relies on cellular phones to communicate with friends and family. Plaintiff also uses her cell phone for navigation purposes, sending and receiving emails, timing food when cooking, and sending and receiving text messages. The plaintiff pays for the cell phone from her personal accounts, and it is not primarily used for business purposes.

39. Plaintiff did not consent to any of the phone calls alleged herein.

40. Each of the phone calls alleged herein was a solicitation phone call soliciting the legal services of Defendant Cordoba.

41. Plaintiff was registered on the National Do Not Call Registry ("DNC List") at all times relevant to this Complaint.

42. Plaintiff received the first prerecorded phone call that displayed 858-308-0427 on the caller identification on May 10, 2024. The call resulted in a prerecorded voicemail being left on Plaintiff's phone. The voicemail said the caller was "American West Funds" and instructed Plaintiff to call 844-510-2208.

43. Plaintiff received the second prerecorded phone call that displayed 945-242-9409 on the caller identification on May 21, 2024. The call resulted in a prerecorded voicemail being left on Plaintiff's phone. The voicemail said the caller was "American West Funds" and instructed Plaintiff to call 844-750-1989.

44. On June 17, 2024, Plaintiff called 844-750-1989 to investigate the origin of the phone calls. Plaintiff was connected to Edward Osorio ("Osorio"). Osorio stated he was with "Credit 1." The call dropped almost immediately.

45. Osorio called Plaintiff back from phone number 561-821-7694.

46. Plaintiff went through the process, and Osorio emailed Plaintiff a link to Defendant Cordoba's website, a contract from Cordoba, and a link to Defendant Credit 1's website. Osorio emailed Plaintiff from the email address eduardo@credit1pro.com.

47. The contact Osorio sent Plaintiff revealed Defendant Cordoba as the company on whose behalf the debt services were solicited.

48. TABLE A shows the phone calls made to Plaintiff by Defendant Credit 1 on behalf of Defendant Cordoba.

49. On June 17, 2024, Plaintiff received a phone call that displayed 213-797-8978 on the caller identification. Plaintiff answered the phone call and was briefly solicited by debt relief services before the call dropped.

50. On June 17, 2024, Plaintiff received another phone call that displayed 213-797-8978 on the caller identification. Plaintiff answered the phone call and was briefly solicited for debt relief services by "Ana Rey" before the call dropped after approximately one minute. Plaintiff was patient and waited for Ana to finish talking so she could tell her she was not interested. But the call dropped before Plaintiff was able to deliver the message.

51. Ana Rey called Plaintiff back from phone number 213-802-0887. Plaintiff was frustrated and hung up the phone.

52. Ana Rey again called Plaintiff from phone number 213-802-0887. Plaintiff hung up the phone.

53. Ana Rey again called Plaintiff from phone number 213-802-0887. This time Plaintiff went through the process to determine who was making the persistent phone calls.

54. Ana Rey eventually sent Plaintiff a contract via Clixsign from the email address ana@easyfinanceusa.com. The contract was yet another contract from Defendant Cordoba.

55. Plaintiff delivered a DNC request to Ana Rey on June 17, 2024, at 4:50 PM when Ana Rey called Plaintiff in an attempt to get Plaintiff to sign the contract. Ana Rey called Plaintiff from phone number 213-802-0887.

56. On June 18, 2024, at 4:29 PM, Plaintiff was again called by Ana Rey. Plaintiff reminded Ana Rey of the DNC request Plaintiff had delivered to Ana Rey the previous day.

57. On June 19, 2024, at 1:03 PM, Plaintiff received a phone call from phone number 213-797-8978. The call dropped when Plaintiff answered the phone call.

58. On June 19, 2024, at 1:04 PM, Plaintiff received another phone call from phone number 213-797-8978. Plaintiff answered the phone and the agent said they were from Easy Finance and were "calling on behalf of Ana Rey." Plaintiff reminded the agent of the previous DNC requests.

59. On June 19, 2024, at 1:26 PM, Plaintiff received a phone call from phone number 561-821-7838. Plaintiff answered the phone call and was greeted by a solicitor who said he was, "Ed, from Cordoba." Plaintiff delivered another DNC request.

60. Plaintiff delivered multiple DNC requests to Ana Rey. Ana Rey continued to call the Plaintiff and instructed others to call the Plaintiff despite the repeated DNC requests.

61. TABLE B shows the phone calls from Defendant Easy Finance on behalf of Defendant Cordoba.

62. Plaintiff did not have an existing business relationship with Defendants and never consented to receive prerecorded phone calls or any calls from Defendants.

63. Plaintiff did not consent to any of the calls alleged herein.

64. Table A shows the calls sent to Plaintiff by Defendant Credit 1 on behalf of Defendant Cordoba.

TABLE A:

| Number: | Date: | Time: | Caller ID: | Notes: |
|---|---|---|---|---|
| 1. | 4/26/2024 | 12:09 PM | 213-877-7751 | prerecorded message call |
| 2. | 5/09/2024 | 2:24 PM | 626-553-7561 | prerecorded message call |
| 3. | 5/13/2024 | 11:07 AM | 620-900-9156 | prerecorded message call |
| 4. | 5/13/2024 | 11:15 AM | 949-606-1672 | Sent contract from email address mgallon@Credit 1financial.net |

65. Table B shows the calls sent to Plaintiff by Defendant Easy Finance on behalf of Defendant Cordoba.

| Number: | Date: | Time: | Caller ID: | Notes: |
|---|---|---|---|---|
| 1. | 6/17/2024 | 4:22 PM | 213-797-8978 | Call dropped |
| 2. | 6/17/2024 | 4:24 PM | 213-797-8978 | Call dropped |
| 3. | 6/17/2024 | 4:26 PM | 213-802-0887 | Hung up the phone |
| 4. | 6/17/2024 | 4:32 PM | 213-802-0887 | Hung up the phone |
| 5. | 6/17/2024 | 4:41 PM | 213-802-0887 | Sent contract from ana@easyfinanceusa.com |
| 6. | 6/18/2024 | 4:29 PM | 213-802-0887 | Ana Rey. Delivered a second DNC request |
| 7. | 6/19/2024 | 1:03 PM | 213-797-8978 | Call dropped |
| 8. | 6/19/2024 | 1:04 PM | 213-797-8978 | Calling on behalf of Ana Rey. Delivered a third DNC request |
| 9. | 6/19/2024 | 1:26 PM | 561-821-7838 | Ed from Cordoba. Delivered a fourth DNC request |

66. On June 18, 2024, Plaintiff searched on the Texas Secretary of State website https://direct.sos.state.tx.us/telephone/telephonesearch.asp and did not find a valid Texas Solicitation Registration as required by Texas Business and Commerce Code 302.101 for any of the Defendants.

67. Defendants have never had a valid Texas Solicitation Registration.

68. Defendant Cordoba has been sued multiple times in the Western District of Texas and has full knowledge of the requirement to obtain a telephone solicitation registration in Texas.

69. Plaintiff was located in El Paso, Texas at all times. The phone calls came to Plaintiff's El Paso, TX 915 area code phone number.

70. Every call was placed without maintaining an internal do-not-call policy or training their agents/employees on the use of an internal do-not-call policy.

71. No emergency necessitated the calls.

72. Through information and belief, Defendants did not have a written do-not-call policy while it was sending unsolicited calls.

73. Defendant placed multiple unauthorized prerecorded robocalls to Plaintiff within a twelve-month period to Plaintiff's residential phone line, listed on the National DNC, which violated 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(c).

74. Every prerecorded voice message phone call was a knowing and willful violation because the act was intentional. A prerecorded voice message phone call can only be purposefully placed and cannot be an accident or mistake.

**DEFENDANT CORDOBA IS DIRECTLY LIABLE FOR THE TEX. BUS. COM. CODE § 302.101 VIOLATIONS**

75. The Texas Business and Commerce Code requires sellers to obtain a registration

certificate from the Secretary of State to make telephone solicitations inside the state of Texas or to residents in Texas.

76. "' Telephone solicitation' means a telephone call a seller or salesperson initiates to induce a person to purchase, rent, claim, or receive an item."

77. "A person makes a telephone solicitation if the person effects or attempts to effect a telephone solicitation." Tex. Bus. & Com. Code § 302.002.

78. A "seller" is defined as "A person who makes a telephone solicitation on the person's on behalf." Tex. Bus. & Com. Code §302.001(5).

79. A "salesperson" is defined as "A person who is employed or authorized by a seller to make a telephone solicitation." Tex. Bus. & Com. Code §302.001(4).

80. Federal common law principles of agency apply to TBCC violations…and the conduct of the telemarketer who makes the calls can be imputed to the seller if the telemarketer is an agent of the seller. *Guadian v. Progressive Debt Relief, LLC*, No. EP-23-cv-235, 2023 WL 7393129, at *4 (W.D. Tex. Nov. 8, 2023); *see also Callier v. Tip Top Cap. Inc.*, No. EP-23-cv-437, 2024 WL 1637535, at *3 (W.D. Tex. Apr. 16, 2024) (holding that a seller violates § 302.101 when a telemarketer makes calls on behalf of a seller who does not hold a registration certificate); *Forteza v. Pelican Inv. Holdings Grp., LLC*, No. 23-cv-401, 2023 WL 9199001, at *6 (E.D. Tex. Dec. 27, 2023) (same); *Salaiz v. Beyond Fin., LLC*, No. EP-23-cv-6, 2023 WL 6053742, at *5 (W.D. Tex. Sept. 18, 2023) (refusing to dismiss a § 302.101 claim because "Plaintiff has plausibly alleged that Defendant effected or attempted to effect the thirteen calls Plaintiff received by hiring telemarketers to make those calls.").

**VICARIOUS LIABILITY OF DEFENDANT CORDOBA FOR TCPA VIOLATIONS**

81. Defendant Cordoba is "vicariously liable" under federal common law principles of

agency for TCPA violations committed by third-party telemarketers," such as Credit 1 and Easy Finance. *In re Joint Pet. filed by Dish Network, LLC*, 28 F.C.C.R. 6574, 6582 (2013).

82. Cordoba markets legal representation through direct telephone solicitation by its hired telemarketers Credit 1 and Easy Finance, who act on their behalf. Credit 1 and Easy Finance enroll potential clients for Cordoba and Cordoba accepts those leads with full knowledge the phone call that contacted the customers violated the TCPA.

83. Credit 1 and Easy Finance made the phone calls on Cordoba's behalf with Cordoba's actual knowledge and authority.

84. Cordoba directs, controls, authorizes, and pays Credit 1 and Easy Finance to generate leads for legal services through telephone solicitation. Moreover, they require, authorize, or at least permit Credit 1 and Easy Finance to solicit explicitly for debt relief representation.

85. Cordoba sets the criteria for qualifying leads, which Credit 1 and Easy Finance must follow, and Credit 1 and Easy Finance solicit exclusively for Cordoba. Plaintiff is unaware of the qualifying thresholds, but the salient question is how much consumer debt the potential client holds.

86. On information and belief, Cordoba, wrote or at least approved the call script the telemarketers use when qualifying leads for Cordoba.

87. Cordoba maintained interim control over Credit 1 and Easy Finance by controlling how and under what circumstances they would accept clients from Credit 1 and Easy Finance.

88. Credit 1 and Easy Finance are Cordoba's telemarketers and do nothing to disturb the impression that Easy Finance and Credit 1 work for and speak and act on behalf of Cordoba.

89. From Credit 1 and Easy Finance's telemarketers' initial call through Defendant Cordoba's acceptance of a completed representation application, the telemarketing of Cordoba's legal

representation constitutes a singular, coordinated marketing effort devised, authorized, directed, and controlled by Cordoba, the principals with Credit 1 and Easy Finance acting as Cordoba's agent.

90. Credit 1 and Easy Finance, acting with actual and implied authority, made the prohibited calls and qualified Plaintiff according to Cordoba's criteria

**INJURY TO PLAINTIFF**

91. Defendants' calls invaded Plaintiff's privacy and were a nuisance.

92. Defendants' calls confused Plaintiff and caused Plaintiff to become aggravated.

93. Defendants' refusal to properly identify themselves and the company on whose behalf the phone calls were being made caused Plaintiff to have to spend valuable time investigating the origin of the phone calls.

94. Plaintiff was angry, frustrated, and annoyed by Defendants' phone calls.

95. Defendants' calls harmed Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone.

96. Defendants' calls caused Plaintiff to use her battery, which resulted in more frequent cell phone charging, which reduced Plaintiff's enjoyment of her cell phone.

**COUNT ONE:**

**(Non-Emergency Robocalls to Cellular Telephones, 47 U.S.C. § 227(b)(1)(A)(iii))**

**(Against Defendant Cordoba and Defendant Credit 1)**

97. Plaintiff re-alleges and re-adopts paragraphs 1 through 96 of the Complaint as if fully set forth herein.

98. Defendants placed, or had placed on their behalf, three (3) prerecorded telemarketing

telephone calls to Plaintiff's cellular telephone number without prior express written consent.

99. Defendants have therefore violated 47 U.S.C. § 227(b).

100. As a result of Defendant's unlawful conduct, Plaintiff is entitled to an award of $500 in statutory damages for each call, pursuant to 47 U.S.C. § 227(b)(3)(B).

101. Plaintiff is entitled to an award of treble damages in an amount up to $1,500 for each call made knowingly and/or willfully, pursuant to 47 U.S.C. § 227(b)(3).

## COUNT TWO:

**(Violation of the TCPA "Sales Call/DNC" Prohibition, 47 U.S.C. 227(c), and 47 C.F.R. § 64.1200(C))**

**(Against All Defendants)**

102. Plaintiff incorporates the preceding paragraphs 1-96 as if fully set forth herein.

103. Defendants placed, or had placed on their behalf, telemarketing telephone calls to Plaintiff's residential telephone number.

104. Plaintiff's telephone number was on the National Do-Not-Call Registry at the time of calls.

105. Plaintiff received two or more such calls in a 12-month period.

106. Plaintiff is entitled to an award of $500 in statutory damages for each call pursuant to 47 U.S.C. § 227(c)(5) for each of thirteen (13) solicitation phone calls.

107. Plaintiff is entitled to an award of treble damages in an amount up to $1,500 for each call made knowingly and/or willfully, pursuant to 47 U.S.C. § 227(c)(5).

## COUNT THREE:

**Violations of Texas Business and Commerce Code, § 302.101**

**(Against Defendant Cordoba)**

108. Plaintiff realleges and incorporates paragraphs 1-96 as if fully set forth herein.

109. . Defendants failed to obtain a registration certificate from the Office of the Secretary of State of Texas pursuant to § 302.101 of the Texas Business and Commerce Code.

110. Defendant placed eight (8) telephone solicitations to Plaintiff's telephone number.

111. Defendants' telephone solicitations were made from a location in Texas or to Plaintiff while she was located in Texas.

112. Plaintiff is entitled to an award of up to $5,000 for each violation and all reasonable costs of prosecuting the action, including court costs and investigation costs, deposition expenses, witness fees, and attorney's fees for each of thirteen (13) solicitation phone calls.

## COUNT FOUR:

## Violations of Texas Business and Commerce Code, § 305.053

## (Against All Defendants)

113. Plaintiff realleges and incorporates paragraphs 1-96 as if fully set forth herein.

114. Defendants placed in a 12-month period more than one telemarketing telephone call to Plaintiff's telephone number.

115. Plaintiff received thirteen (13) calls in violation of Tex. Bus. & Com. Code §305.053.

116. Each of these calls violated 47 U.S.C. § 227 or a regulation adopted under that provision.

117. Plaintiff is entitled to the greater of $500 for each violation or Plaintiff's actual damages (*see* Tex. Bus. & Com. Code §304.053(b).

118. Plaintiff is entitled to the greater of $1,500 for each violation or Plaintiff's actual damages for each call made knowingly or intentionally (*see* Tex. Bus. & Com. Code §304.053(c).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Nubia Herrera prays for judgment against the Defendant as follows:

A. An order declaring that Defendants' actions, as set out above, violate the TCPA and the Texas Business and Commerce Code because they are a violation of 47 U.S.C. §§ 227 (c), 227(b), 47 C.F.R. §§64.1200(c)(4) and/or 47 C.F.R. § 64.1601(e);

B. An award of statutory damages under the Telephone Consumer Protection Act;

C. An order declaring that Defendants' actions, as set out above, violate Tex. Bus. & Com. Code § 302101;

D. An award of statutory damages under the Texas Business and Commerce Code;

E. An award of treble damages;

F. An award of reasonable attorneys' fees and costs, including the costs set forth pursuant to Tex. Bus. & Com. Code § 302.302(d); and

G. All other relief, in law and in equity, to which Plaintiff may be entitled.

June 20, 2024, Respectfully submitted,

Nubia Herrera
Plaintiff, Pro Se
7519 N Loop Drive
El Paso, TX 79915
915-888-0489
Nubia88.nh@gmail.com

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury on all claims so triable.

June 20, 2024,

Respectfully submitted,

Nubia Herrera
Plaintiff, Pro Se
7519 N Loop Drive
El Paso, TX 79915
915-888-0489
Nubia88.nh@gmail.com